UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANGELA PROCTOR,

                      Plaintiff,
     v.                                        **DECISION AND ORDER**
                                                              09-CV-1028S

PMR LAW GROUP a/k/a PROFILE RECOVERY
GROUP, LLC,

                      Defendant.

## I. INTRODUCTION

On November 30, 2009, Plaintiff filed a complaint alleging various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. Defendant failed to appear and defend this action, which resulted in the Clerk of the Court entering default on April 15, 2010. Presently before this Court is Plaintiff's Motion for Default Judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.[1] For the following reasons, Plaintiff's motion is granted.

## II. BACKGROUND

Plaintiff Angela Proctor incurred a consumer debt that Defendant PMR Law Group, a/k/a Profile Recovery, LLC ("PMR Law Group"), attempted to collect. (Complaint, Docket No. 1, ¶¶ 3, 5, 6.) PMR Law Group is a "debt collector" within the meaning of the FDCPA. (Id. at ¶ 5.)

Proctor asserts that PMR Law Group never sent her a debt validation notice, yet

---

[1]The submissions relating to this motion are filed at docket number 5.

1

continuously called her, seeking and demanding repayment of the consumer debt. (Id. at ¶¶ 11, 12, 16.) PMR Law Group would call Proctor from one of two telephone numbers, but would not properly identify itself to her as a debt collector. (Id. at ¶¶ 11, 12.) Proctor asserts that she received collection calls from PMR Law Group at her workplace, despite having told PMR Law Group not to call her there, and further, that PMR Law Group threatened Proctor with legal action and wage garnishment if she did not pay the debt. (Id. at ¶¶ 13–15.)

### III. DISCUSSION

**A.     Default Judgment Standard**

Before obtaining default judgment, a party must first secure the clerk's entry of default by demonstrating, by affidavit or otherwise, that the opposing party is in default. See FED. R. CIV. P. 55(a). Once default has been entered, the allegations of the complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

In considering whether to enter default judgment, the court must determine whether the facts alleged in the complaint are sufficient to state a claim for relief as to each cause of action for which the plaintiff seeks default judgment. Further, where the damages sought are not for a sum certain, the court must determine the propriety and amount of the default judgment. See FED. R. CIV. P. 55(b)(2). Damages must be established by proof, unless the damages are liquidated or "susceptible of mathematical computation." Flaks

v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). All reasonable inferences from the evidence presented are drawn in the moving party's favor. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

Here, PMR Law Group is deemed to admit the allegations in the complaint due to its default. Accepting the uncontested facts as true, this Court must now determine whether PMR Law Group violated the FDCPA so as to merit granting the relief sought—statutory damages, reasonable attorney's fees, and costs. (Plaintiff's Motion for Default Judgment, Docket No. 5, p. 1.)

**B.     Liability**

**1. Claims under 15 U.S.C. § 1692c (a)(3)**

Section 1692c (a)(3) prohibits debt collectors from communicating with a consumer regarding debt collection "at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication." See 15 U.S.C. § 1692c (a)(3).

In her complaint, Proctor recites the statutory language to allege that PMR Law Group violated 15 U.S.C. § 1692c (a)(3). (Complaint, ¶ 17 (a).) While Proctor asserts that she told PMR Law Group not to call her at work, she makes no factual allegation that PMR Law Group knew or had reason to know that Proctor's employer prohibits such telephone calls to support a § 1692c (a)(3) claim. (Complaint, ¶ 13.) Thus, Proctor has failed to establish a violation of that section.

**2. Claims under 15 U.S.C. §§ 1692d and 1692d (6)**

Section 1692d makes it generally unlawful for a debt collector to engage in any

3

conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." As a specific example, the statute prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity." See 15 U.S.C. § 1692d (6).

Proctor asserts that PMR Law Group "constantly and continuously" called her. (Complaint, ¶ 11.) That is a conclusion, however, that this Court cannot so find without a specific number of collection calls alleged in the record. Here, the record does not indicate the number of times that PMR Law Group actually telephoned Proctor to support a § 1692d claim. Thus, there is no violation of that section.

Proctor alleges that PMR Law Group violated 15 U.S.C. § 1692d (6) by "failing to properly identify itself when placing collection calls to Plaintiff." (Complaint, ¶ 12.) Based on the undisputed facts taken as true, this Court finds that Defendant violated § 1692d (6), as alleged.

### 3. Claims under 15 U.S.C. §§ 1692e and 1692e (10)

Section 1692e prohibits debt collectors from using false, deceptive, or misleading representations to collect a debt. The statute provides as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

4

Plaintiff alleges that Defendant violated 15 U.S.C. §§ 1692e and 1692e (10) by making "false representations" and engaging in "deceptive means to collect an alleged debt." (Complaint, ¶¶ 17 (d), 17 (e).) Specifically, Proctor alleges that PMR Law Group threatened to commence legal proceedings against Proctor and garnish Proctor's wages if she did not repay her debt. (Complaint, ¶¶ 14, 15.) Here, the complaint does not contain allegations that PMR Law Group would not or did not commence legal proceedings against Proctor or garnish Proctor's wages. Because the record fails to indicate how these representations were false, deceptive, or misleading, no conduct is alleged to support a §§ 1692e or 1692e (10) claim. Thus, there are no violations of these sections.

### 4. Claims under 15 U.S.C. § 1692f

Section 1692f prohibits debt collectors from using unfair or unconscionable means to collect or attempt to collect any debt. Proctor alleges that PMR Law Group violated 15 U.S.C. § 1692f by "engaging in unfair and unconscionable means to collect or attempt to collect an alleged debt." (Complaint, ¶ 17 (f).) But the unfair or unconscionable conduct alleged must be in addition to the acts that a plaintiff alleges violate other sections of the FDCPA. See Foti v. NCO Financial Sys., Inc., 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006). Here, no additional conduct is alleged to support a § 1692f claim. Indeed, no specific conduct whatsoever is alleged to support this claim. Thus, there is no violation of this section.

### 5. Claims under 15 U.S.C. § 1692g (a)(1–5)

Section 1692g requires debt collectors to send to consumers a written notice "within five days after the initial communication with a consumer in connection with the collection

of any debt." See 15 U.S.C. § 1692g (a)(1–5).

Proctor alleges that in not sending her a debt validation notice, PMR Law Group violated § 1692g (a)(1–5) by failing to provide Proctor proper notice of the debt. (Complaint, ¶¶ 16, 17 (g).) Based on the undisputed facts taken as true, this Court finds that Defendant violated § 1692g (a)(1–5), as alleged.

Accordingly, liability under the FDCPA is established.

**C.    Damages**

Section 1692k (a)(2)(A) of Title 15 authorizes up to $1,000 in statutory damages per plaintiff for any violation of the FDCPA. The specific amount of statutory damages, not to exceed $1,000, falls within the court's discretion. See Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998). Factors to be considered by the court in determining an appropriate statutory damages award include the frequency, persistence, and nature of the debt collector's noncompliance, and the extent to which the debt collector's noncompliance was intentional. See 15 U.S.C. § 1692k (b)(1).

Here, Proctor requests the statutory maximum of $1,000 in damages, which is excessive. The record is bare of specific factual allegations regarding the frequency or persistence of PMR Law Group's noncompliance. (Complaint, ¶¶ 11–15.) PMR Law Group is deemed to have admitted calling Proctor more than once, failing to properly identify itself in its calls to Proctor, and failing to send Proctor a debt validation notice. Although these acts violate the FDCPA, they are not so persistent or egregious as to warrant the statutory maximum penalty. Given these circumstances, Proctor will be awarded $250 in statutory damages, pursuant to § 1692k (a)(2)(A). See Estay v. Moren and Woods LLC, No. 09-CV-620A, 2009 WL 5171881, at *2 (W.D.N.Y. Dec. 22, 2009)

(awarding plaintiff $250 in statutory damages where defendant made harassing calls on more than one occasion and made empty threats of litigation); Fontana v. C. Barry & Assocs., LLC, 06-CV-359, 2007 WL 2580490, at *2 (W.D.N.Y. Sep. 4, 2007) (similar); cf. Mostiller v. Chase Asset Recovery Corp., No. 09-CV-218A, 2010 WL 335023, at *2 (W.D.N.Y. Jan. 22, 2010) (awarding $150 in statutory damages where defendant's noncompliance consisted of one telephone message threatening unintended legal action); Annis v. E. Asset Mgmt., LLC, No. 08-CV-458S, 2010 WL 1035273, at *5 (W.D.N.Y. Mar. 18, 2010) (awarding $1,000 in statutory damages where defendant's violations of the FDCPA included four months of calling plaintiff almost daily, threatening unintended litigation, and targeting both the plaintiff and her family).

**D.     Attorney's Fees and Costs**

The FDCPA provides for the recovery of reasonable attorney's fees and costs by successful litigants. See 15 U.S.C. § 1692k (a)(3) (permitting recovery of, "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court").

In Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,[2] the Second Circuit "undertook to simplify the complexities surrounding attorney's fees awards that had accumulated over time" in the circuit and district courts. Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). In particular, the court sought to reconcile the "lodestar" method of determining fees (the product of the attorney's usual hourly rate and the number of hours billed, subject to adjustment based on case-specific

---

[2] 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008).

considerations to arrive at a "reasonable fee"), with the method developed in Johnson v. Georgia Highway Express, Inc.[3] (which considered twelve specific factors to arrive at the "reasonable fee"). Arbor Hill, 493 F.3d at 114. "Relying on the substance of both approaches, [the Second Circuit] set forth a standard that [it] termed the 'presumptively reasonable fee.'" Simmons, 575 F.3d at 174.

District courts now are directed to set a reasonable hourly rate, bearing in mind all the case-specific variables that the Second Circuit and other courts have identified as relevant to the reasonableness of attorney's fees, and then use the reasonable hourly rate to calculate a "presumptively reasonable fee." Arbor Hill, 493 F.3d at 117.

"[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (citations and quotations omitted). After Arbor Hill, the presumptively reasonable fee is "what a reasonable, paying client would be willing to pay," given that a client "wishes to spend the minimum necessary to litigate the case effectively." 493 F.3d at 112, 118.

To arrive at that fee, district courts must also consider the twelve Johnson factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the

---

[3] 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by* Blanchard v. Bergeron, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989).

experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717–19.

Finally, a district court must consider that a client may be able to negotiate with his or her attorneys, based on their desire for the reputational benefits that could accrue from being associated with the case. Arbor Hill, 493 F.3d at 118.

This method of reasonable fee calculation has been used in this district to determine appropriate fees in FDCPA cases. See, e.g., Robbins v. Viking Recovery Servs. LLC, No. 09-CV-1030A, 2010 WL 1840318, at *3–4 (W.D.N.Y. May 7, 2010); Mostiller, 2010 WL 335023, at *4–5; Estay, 2009 WL 5171881, at *3–4.

Here, Proctor's lawyers, all of whom practice outside of this district, have submitted affidavits and detailed time records supporting the claim for $3,275.60 in attorney's fees and expenses. Attorney Adam Krohn claims 0.9 hours at $394 per hour; Attorney Adam Hill claims 4.0 hours at $265 per hour; Attorney Mahadhi Corzano claims 2.7 hours at $210 per hour; Attorney Vivek Tandon claims 1.7 hours at $195 per hour; the Clerk/Legal Assistant/Paralegal claims 7.7 hours at $125 per hour. (See Docket Nos. 5, 5-1.) Proctor also seeks recovery of the $350 filing fee, the $46.61 process-service fee, and $500 of anticipated collection costs. (Id.)

The time expended for prosecution of this case appears reasonable. However, this Court finds that the hourly rates claimed are excessive for this district. Because this case involves out-of-district counsel, this Court must consider the "forum rule" to determine reasonable fees. See Disabled Patriots of Am., Inc. v. Niagara Group Hotels, LLC, 688 F. Supp. 2d 216, 223 (W.D.N.Y. 2010). The "forum rule" dictates that courts "should

generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee.'" Arbor Hill 493 F.3d at 119 (quoting In re "Agent Orange" Prod. Liability Litig., 818 F.2d 226, 232 (2d Cir. 1987). Unless it is established that a reasonable client would have selected out-of-district counsel because doing so would likely produce a substantially better result, the prevailing fee in the district is presumptively reasonable. See Simmons, 575 F.3d at 175–76.

Here, there has been no showing that retaining out-of-district counsel was necessary to likely produce a substantially better result. Nothing about this case distinguishes it from the many other FDCPA cases filed in this district. Accordingly, this Court finds that the prevailing rates in this district are presumptively reasonable. Rates of $215 for a partner and $175 for an associate with experience and expertise in FDCPA cases have been approved in this district as reasonable hourly rates for cases of this kind. See Mostiller, 2010 WL 335023, at *5; Berry v. Nat'l Fin. Sys., Inc., No. 08-CV-18A, 2009 WL 2843260, at *6 (W.D.N.Y. Aug. 27, 2009); Miller v. Midpoint Resolution Group, LLC, 608 F. Supp. 2d 389, 395 (W.D.N.Y. 2009). Given his experience, Krohn will be compensated at $215 per hour. Hill, Corzano, and Tandon will be compensated at $175 per hour. The paralegal rate will be reduced to $75 per hour. See Disabled Patriots, 688 F. Supp. 2d at 226.

Accordingly, this Court awards $193.50 for Krohn's .9 hours at $215 per hour, $700 for Hill's 4.0 hours at $175 per hour, $472.50 for Corzano's 2.7 hours at $175 per hour, $297.50 for Tandon's 1.7 hours at $175 per hour, and $577.50 for the Clerk/Paralegal's 7.7 hours at $75 per hour, for a total fee award of $2,241. This Court finds $2,241 to be a presumptively reasonable fee given the facts and circumstances of this case. Further,

this Court finds reimbursement of the $350 filing and $46.61 process-service fees to be proper. The Court declines to award costs that Proctor has not yet incurred (i.e., anticipated collection costs).

### IV. CONCLUSION

For the foregoing reasons, Proctor's Motion for Default Judgment is granted. Proctor is awarded $250 in statutory damages, $2,241 in attorney's fees, and $396.61 in costs, for a total of $2,887.61.

### V. ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for Default Judgment (Docket No. 5) is GRANTED.

FURTHER, that the Clerk of the Court is directed to enter judgment in favor of Plaintiff against Defendant in the amount of $2,887.61, with apportionment consistent with the foregoing decision.

FURTHER, that the Clerk of the Court shall close this case upon entry of judgment.

SO ORDERED.

Dated: October 21, 2010
Buffalo, New York

              s/William M. Skretny
              WILLIAM M. SKRETNY
              Chief Judge
              United States District Court